**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 11, 2022**

# In the Court of Appeals of Georgia

A22A1416. IN THE INTEREST OF S. D., a child.

PHIPPS, Senior Appellate Judge.

In this juvenile delinquency proceeding, the State appeals from a juvenile court order closing and sealing the case. The State raises several challenges to the juvenile court's authority to enter such an order under the facts of this case. Because the State has not met its burden of establishing reversible error, we affirm.

In September 2021, a complaint was filed alleging that then-16-year-old student S. D. brought a pocket knife to school. The following December, the State filed a delinquency petition in juvenile court alleging that, by bringing the knife to school, S. D. had committed an act which, if committed by an adult, would have constituted the felony offense of carrying a weapon in a school safety zone or at a school function without a license to carry weapons, in violation of OCGA

§ 16-11-127.1 (b) (2021). Following S. D.'s February 2022 arraignment, and at his counsel's request, the juvenile court entered an order holding adjudication in abeyance for 90 days.[1] As conditions of the abeyance, the court required S. D. to write two one-page essays on topics specified by the court and to participate in a conflict-resolution program or therapy. The order provided that "if the child is compliant with the conditions of abeyance this matter will be administratively closed and the record sealed."

Approximately two weeks later, S. D. filed an emergency motion for a review hearing on the ground that his aunt — who was his guardian in Georgia — planned to return the child to his mother in Chicago in a few days' time. A video-conference hearing was held later that morning. During the hearing, S. D.'s probation officer testified that S. D. had written both of the essays assigned by the juvenile court. The probation officer further testified that, while he had made multiple referrals for a conflict-resolution program, services were denied due to insurance issues and the impending plan for S. D. to return to his mother in Chicago. In light of S. D.'s upcoming move, the probation officer recommended that the child's case be "closed

---

[1] The order of abeyance mistakenly indicates that the State requested abeyance. During the arraignment hearing, the State opposed S. D.'s request for abeyance.

successfully." S. D.'s aunt testified that the child was permanently moving in with his mother out-of-state and would not be returning to Georgia. The State asked for the case to be "closed unsuccessfully and not sealed" because S. D. had not completed a conflict-resolution program.

Following the hearing, the juvenile court entered an order in which it found that S. D. had completed the two essays required as conditions of the prior order of abeyance but had not completed a conflict-resolution program. After reviewing several of the pertinent circumstances in this case — including the probation officer's recommendation to close the case "successfully" — the court closed and sealed the case over the State's objection. This appeal followed.

1. We first address S. D.'s contention that we lack jurisdiction over this appeal. According to S. D., none of the provisions of OCGA § 5-7-1 authorizes an appeal by the State from the order at issue here. We disagree.

As relevant here, OCGA § 5-7-1 (a) (1) authorizes the State to file a direct appeal from a juvenile court "order, decision, or judgment setting aside or dismissing . . . a petition alleging that a child has committed a delinquent act . . . ." Here, the juvenile court's order closing and sealing the case is the functional equivalent of an order dismissing a delinquency petition because, as a result of the order, S. D. will no

longer be held to answer for the allegations in the petition. See *State v. Singh*, 291 Ga. 525, 526 (1) (731 SE2d 649) (2012) ("[T]he appealability of an order is ultimately determined by its substance and effect, not its nomenclature."); *Planet Ins. Co. v. Ferrell*, 228 Ga. App. 264, 266 (491 SE2d 471) (1997) ("[P]leadings, motions and orders are to be construed according to their substance and function and not merely as to their nomenclature . . . ."); cf. *In the Interest of A. L.*, 354 Ga. App. 59, 60 (840 SE2d 148) (2020) (concluding that, while the juvenile court purported to dismiss a delinquency "petition" in the order on appeal, the court in substance dismissed the "proceeding," not the "petition," as a result of which this Court lacked jurisdiction over the State's ensuing appeal under OCGA § 5-7-1 (a)); see also generally OCGA § 15-11-35 (providing for direct appeals "[i]n all cases of final judgments of the juvenile court"). Consequently, the order at issue is appealable by the State under OCGA § 5-7-1 (a) (1), and we therefore reject S. D.'s contention that we lack jurisdiction over this appeal.

2. The State contends that the juvenile court lacked the authority to seal this case because neither of the prerequisites to sealing a case was satisfied. As relevant here, under OCGA § 15-11-701 (a), the file and records in a juvenile court case must be sealed "[u]pon dismissal of a petition or complaint alleging delinquency . . . or

4

completion of the process in a case handled through informal adjustment, mediation, or other nonadjudicatory procedure . . . ." Pretermitting whether either of these avenues is a necessary prerequisite to sealing a case, we conclude that both were satisfied here.

(a) As stated above in Division 1, the juvenile court's order closing this case had the same practical effect as a dismissal of the delinquency petition. Consequently, the court was required to seal the case under OCGA § 15-11-701 (a). The State, however, maintains that the juvenile court lacked the authority to dismiss the petition in this case. According to the State, a juvenile court may dismiss a delinquency petition only under two specific limited circumstances, neither of which, the State claims, is present here: (i) following a transfer of the case to superior court, OCGA § 15-11-566 (a); and (ii) when the evidence presented at an adjudication hearing does not establish the allegations of delinquency, OCGA § 15-11-582 (d). But that argument ignores several other reasons why a delinquency petition may be dismissed. See, e.g., OCGA §§ 15-11-540 (authorizing the dismissal of a delinquency petition "upon the motion of the prosecuting attorney setting forth that there is not sufficient evidence to warrant further proceedings"); 15-11-660 (d)-(e) (authorizing the dismissal of delinquency petitions for reasons related to a child's competency); *In the*

5

*Interest of R. D. F.*, 266 Ga. 294, 296 (3) (466 SE2d 572) (1996) ("The failure to comply with [various Juvenile Code provisions] results in dismissal of the [delinquency] petition without prejudice."); *In the Interest of C. W.*, 345 Ga. App. 750, 750-751 (815 SE2d 123) (2018) ("[T]he delinquency petition was subject to dismissal because it did not disclose the name of the victim . . . ."); *In the Interest of M. B.*, 217 Ga. App. 660, 662 (458 SE2d 864) (1995) (concluding that the juvenile court erred when it denied a juvenile's motion to dismiss a delinquency petition on the ground that, as an alleged juvenile delinquent, he could not commit the crime set forth in the petition); see also generally *In the Interest of K. C.*, 290 Ga. App. 416, 417 (659 SE2d 821) (2008) ("The juvenile court procedures do not implicate the merits of a delinquency petition, and their violation does not demand an acquittal. On the contrary, noncompliance authorizes dismissal of the petition without prejudice."). Consequently, we reject the State's argument that the juvenile court's authority to dismiss a delinquency petition is limited to the two instances identified in its brief.

(b) Moreover, as explained more fully below, the court's disposition here also constituted a "completion of the process" through a "nonadjudicatory procedure" under OCGA § 15-11-701 (a). This issue involves statutory construction, which is a legal question that we address de novo. See *State v. Hammonds*, 325 Ga. App. 815,

6

815 (755 SE2d 214) (2014). We note that the parties have not cited, and research has not revealed, any Georgia appellate decisions explicitly defining the phrases "completion of the process" or "nonadjudicatory procedure" as used in this context.

> [I]n considering this question of statutory interpretation, we necessarily begin our analysis with familiar and binding canons of construction. Indeed, in analyzing the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. In sum, where the language of a statute is plain and susceptible of only one natural and reasonable construction, an appellate court must construe the statute accordingly.

*In the Interest of L. T.*, 325 Ga. App. 590, 591-592 (754 SE2d 380) (2014) (citations and punctuation omitted). With those general guiding principles in mind, we also highlight the General Assembly's express intent that the Juvenile Code — of which OCGA § 15-11-701 is a part — "shall be liberally construed to reflect that the paramount child welfare policy of this state is to determine and ensure the best interests of its children." OCGA § 15-11-1; accord *In the Interest of M. B.*, 217 Ga.

7

App. at 661 ("The juvenile code is concerned with the care, guidance, and well-being of children.").

So viewed, the plain meaning of the phrase "nonadjudicatory procedure" includes, at the very least, the disposition of a delinquency petition without an adjudication of its merits. Thus, by closing and sealing the case without adjudicating the merits of the delinquency petition, the juvenile court in this case disposed of the petition via a "nonadjudicatory procedure." The State, however, contends that a "nonadjudicatory procedure," as used in OCGA § 15-11-701 (a), must be narrowly defined by the following provisions in OCGA § 15-11-510:

> (c) A juvenile court intake officer may elect to pursue a case through informal adjustment or other nonadjudicatory procedure in accordance with the provisions of Code Section 15-11-515.

> (d) If a case is to be prosecuted further and handled other than by informal adjustment or other nonadjudicatory procedure, a referral shall be made to the prosecuting attorney and a petition for delinquency shall be filed within 30 days of the filing of a complaint.

According to the State, the juvenile court's disposition of S. D.'s case does not constitute a "nonadjudicatory procedure" because (a) no intake officer complied with

8

OCGA § 15-11-515 and (b) the State filed a delinquency petition before the juvenile court disposed of the case. We are unpersuaded.

Nothing in the plain language of OCGA § 15-11-510 or OCGA § 15-11-701 (a) unambiguously limits the meaning of the phrase "nonadjudicatory procedure" as urged by the State. And given the mandate that the Juvenile Code be liberally construed to ensure the best interests of children, the phrase must be read to afford a juvenile court the flexibility and discretion necessary to adequately address the best interest of each child via a procedure that is "nonadjudicatory." We therefore hold that the phrase "nonadjudicatory procedure" includes, at a minimum, any disposition of a delinquency petition that does not entail adjudication of the petition's merits.

The State further argues that, even if this case was disposed of through a nonadjudicatory procedure, no "completion of the process" occurred under OCGA § 15-11-701 (a) because S. D. did not participate in a conflict-resolution program or therapy, as required by the juvenile court's prior order of abeyance. Once again, however, the State seeks to read the statute too narrowly. Nothing in the plain language of OCGA § 15-11-701 (a) suggests that the phrase "completion of the process" places such narrow limits on a juvenile court's authority to find that the "process" of the specific "nonadjudicatory procedure" it employed in a particular case

9

has been completed under all of the circumstances and in light of the best interest of the child at issue. And the State has identified no legal authority so limiting the meaning of the phrase "completion of the process" as used in OCGA § 15-11-701 (a).

Importantly, during the final hearing in this case, the juvenile court found that: (i) S. D. had "no prior history"; (ii) there was no indication that he used the knife at issue in this case offensively; (iii) his failure to participate in a conflict-resolution program resulted from the decisions of adults in his life to move him to Chicago and thus was beyond his control; and (iv) in light of those circumstances, it was in S. D.'s best interest to "have a clean record." And in its ensuing written order, the court further found that S. D.'s mother understood the need for conflict-management services and had agreed to attend therapy with the child, based on the testimony of S. D.'s aunt. Notably, the State does not challenge any of these findings on appeal.

Given the specific facts and procedural posture of this case, we hold that the juvenile court was authorized under the statutory scheme at issue to conclude that the "process" of the "nonadjudicatory procedure" employed by the court was completed in light of all of the circumstances and S. D.'s best interest. We therefore affirm the juvenile court's judgment.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*